UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

ANGELA G.,

                Plaintiff,

-v-

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

19-CV-6864-MJR
DECISION AND ORDER

Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case. (Dkt. No. 18)

Plaintiff Angela G.[1] ("plaintiff") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, plaintiff's motion (Dkt. No. 12) is granted, defendant's motion (Dkt. No. 16) is denied and the matter is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order.

---

[1] In accordance with the District's November 18, 2020, Standing Order, plaintiff is identified by first name and last initial.

## BACKGROUND[2]

Plaintiff filed applications for DIB and SSI on September 14, 2016, alleging disability since December 1, 2015, later amended to January 1, 2016. (Administrative Transcript ["Tr."] 65) After plaintiff's application was denied at the initial level, she requested a hearing by an Administrative Law Judge ("ALJ"). A hearing was held before ALJ Andrew J. Soltes, Jr. on December 11, 2018, in Rochester, New York. (Tr. 61-96) On February 21, 2019, the ALJ issued an unfavorable decision. (Tr. 39-59) The Appeals Council subsequently denied plaintiff's request for review on October 1, 2019. (Tr. 1-6) Thus, the ALJ's decision stands as the final decision of the Commissioner. This action followed. (Dkt. No. 1)

## DISCUSSION

I.  *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential. Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision

---

[2] The Court presumes the parties' familiarity with plaintiff's medical history, which is summarized in the moving papers.

2

rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (*quoting Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II. <u>Standards for Determining "Disability" Under the Act</u>

A "disability" is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such

severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §423(d)(2)(A). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (*quoting Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §404.1520(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §404.1520(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §404.1520(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.* Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions: first,

whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1. *Id.* §404.1520(d). If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.*

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five. Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* §404.1520(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §404.1545(a)(1). The Commissioner's assessment of the claimant's RFC is then applied at steps four and five. At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* §404.1520(f). If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.* §404.1520(g)(1). If the claimant can adjust to other work, he or she is not disabled. *Id.* If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.*

The burden through steps one through four described above rests on the claimant. If the claimant carries their burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

### III. *The ALJ's Decision*

The ALJ followed the required five-step analysis for evaluating plaintiff's claim. Under step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since December 1, 2015. (Tr. 44) At step two, the ALJ found that plaintiff had the severe impairments of lumbar spondylosis with degenerative disc and facet disease, history of lumbar disc herniation status-post surgery, obesity, carpal tunnel syndrome, and bilateral thumb arthritis; and the non-severe impairment of depression.[3] (Tr. 44-48) At step three, the ALJ determined that none of plaintiff's impairments met or medically equaled the Listings. (Tr. 48) Before proceeding to step four, the ALJ found that plaintiff had the RFC to perform sedentary work, as defined in 20 CFR 404.1567(a) and 416.967(a), with the additional limitations of frequent fingering and handling; occasional stooping and crouching; no kneeling or crawling; occasional climbing of ramps and stairs; no climbing ladders, ropes or scaffolds; occasional use of foot controls; and avoiding heights and the use of heavy machinery. (Tr. 48-52)

Proceeding to step four, the ALJ found that plaintiff could not perform her past relevant work as a nurse's assistant and resident care aide. (Tr. 52) At step five, relying on testimony from a vocational expert, the ALJ found that there were jobs in the national

---

[3] Plaintiff's motion relates only to her physical impairments and limitations.

economy that plaintiff could perform. (Tr. 53) Accordingly, the ALJ found that plaintiff has not been under a disability within the meaning of the Act. (Tr. 53-54)

IV.   *Plaintiff's Challenge*

Plaintiff seeks remand of the ALJ's decision on the basis that the ALJ improperly rejected the medical opinion evidence of record, and relied on his own lay opinion in formulating the RFC. (Dkt. No. 12-1 at 21-30) For the reasons stated below, the Court agrees that remand is appropriate.

Plaintiff was 43 years old at the time of the administrative hearing and is a high school graduate with some college coursework. (Tr. 66, 69) She had previously worked as an aide in a residential facility. (Tr. 70) Plaintiff testified that her back pain prevented her from working full-time. (Tr. 73-74) Not long after a back surgery, plaintiff was involved in a motor vehicle accident that caused her pain to worsen. (Tr. 87) The administrative record is voluminous, spanning over 2,000 pages, and includes multiple imaging reports, physical therapy evaluations and treatment, injections, surgical intervention, and examination findings in connection with plaintiff's back impairment.

In the written decision, the ALJ evaluated the opinions of plaintiff's treating physician, Dr. Anne Ryan, and the consultative examiner, Dr. Harbinder Toor, with respect to plaintiff's physical functioning.

On November 15, 2016, plaintiff underwent an internal medicine consultative examination with Dr. Toor. (Tr. 421-427) She appeared to be in moderate pain, gait abnormal, slight limping to the right side, squat 20% of full, slight difficulty changing for exam, had difficulty getting on and off exam table, able to rise from chair with difficulty, limited lumbar ROM, SLR positive both sitting and supine bilaterally at 20 degrees, limited

7

right wrist ROM, tenderness in the right wrist, numbness in the right lower leg and right foot, tingling in the right hand, grip strength 3/5 in the right hand, and moderate difficulty grasping, holding, writing, tying a shoelace, zipping a zipper, buttoning a button, manipulating a coin, or holding objects with the right hand. (Tr. 423-425)

Dr. Toor diagnosed plaintiff with history of herniated disc disease in the lumbar spine, carpal tunnel syndrome in the right hand, and hypertension. (Tr. 425) Dr. Toor opined that plaintiff had moderate to marked limitation in standing, walking, bending, lifting, and carrying, she had a moderate limitation in sitting a long time, and she had a moderate limitation doing fine motor activity with the right hand. (Tr. 425)

The ALJ found that Dr. Toor's opinion had little probative value because the assessed restrictions were largely inconsistent with his own clinical findings, noting that plaintiff displayed normal strength, reflexes, and sensation on examination. (Tr. 51) The ALJ noted that the EMG and NCV studies showed no evidence of lumbar radiculopathy, and other treating physicians noted that plaintiff had no neurological defects. (Tr. 52) Therefore, the ALJ found "no support for the significant restrictions imposed by Dr. Toor . . . ." (Tr. 52)

On December 12, 2017, Dr. Ryan completed a Monroe County Department of Human Services physical assessment for determination of employability. (Tr. 1413-1416) She opined that plaintiff could use public transportation, she was unable to participate in activities except treatment or rehabilitation for 6 months due to chronic back pain after lumbar surgery, she had significant low back and leg pain with prolonged standing, sitting, bending, and lifting, she was very limited to less than 1-2 hours in walking, standing, and

sitting, she could not push, pull, bend, lift, or carry, and she had no limitation in seeing, hearing and speaking. (Tr. 1413-1416)

On July 13, 2018, Dr. Ryan completed another employability assessment. (Tr. 1688-1691) She opined that plaintiff could use public transportation, she was unable to participate in activities except treatment or rehabilitation for 12 months due to chronic back pain after lumbar surgery in May, 2017, she had significant low back and leg pain and decreased endurance with prolonged activity, sitting, standing, bending, and lifting, and she was very limited to less than 1-2 hours in walking, standing, and sitting, she could not push, pull, bend, lift, or carry, and she had no limitation in seeing, hearing and speaking. (Tr. 1688-1691)

On November 9, 2018, Dr. Ryan opined that despite treatment with oral medication, PT, injections, and surgery, plaintiff had no meaningful, sustained improvement in her pain or in her functional status, she had pain severe enough to limit even simple, day-to-day household management tasks like washing dishes, standing or sitting for more than a short period of time in a single position causes discomfort, she followed her doctors' recommendations and demonstrated motivation to do what it took to make her pain better, but unfortunately without improvement, and her pain remained significant enough to limit her ability to hold a job, and her functional status remained compromised. (Tr. 1847)

On November 28, 2018, Dr. Ryan completed a physical residual functional capacity questionnaire regarding plaintiff's chronic low back pain with radiculopathy, hypertension, and depression, depression worsened her pain and vice versa, her pain was severe enough to frequently interfere with the attention and concentration needed to

perform even simple work stress, moderate work stress was okay, she could walk 0-1 city blocks without rest or severe pain, she could sit 15 minutes at a time, she could stand 15 minutes at a time, she could sit less than 2 hours and stand/walk less than 2 hours, she required frequent position changes due to pain, she needed to walk every 15 minutes for a variable amount of time, she needed daily unscheduled breaks for 5-15 minutes at a time, she could occasionally lift and carry 10 pounds, rarely lift and carry 20 pounds, and never lift and carry 50 pounds, she could rarely twist and climb stairs and never stoop, crouch/squat, and climb ladders, she was likely to have good and bad days, she was likely to be absent about 4 days per month, she would not be able to sustain full-time employment at any exertional level, and these symptoms and limitations applied since October 10, 2012, when she was first evaluated for low back injury/pain. (Tr. 2173-2181)

The ALJ gave the opinions of Dr. Ryan an unspecified amount of weight, but found that the opinions were inconsistent with the evidence of record because plaintiff experienced no neurological deficit, she retained normal strength, sensation, and reflexes, and EMG and NCV studies were normal revealing no evidence of lumbar radiculopathy. (Tr. 51) The ALJ found "neither diagnostic nor clinical support for the restrictive physical assessment provided by Dr. Ryan." (Tr. 51)

The ALJ then vaguely concluded that the RFC assessment was "supported by clinical findings, diagnostic studies, and the reports of treating and examining sources." (Tr. 52)

The Court is aware that the RFC determination need not "perfectly correspond" with any one opinion. *Matta v. Astrue*, 508 Fed. Appx. 53, 56 (2d Cir. 2013) (summary order). Here, however, the ALJ appears to have rejected all of the opinion evidence.

Without any opinion evidence to rely on, the ALJ instead generally cited to plaintiff's lack of neurological defects on examination, unremarkable EMG and NCV studies, and that she was encouraged by her doctor to walk for exercise. (Tr. 48-49, 51-52) This was error. *See Baird v. Berryhill*, No. 16-CV-355, 2018 WL 1702758, at *6 (W.D.N.Y. Mar. 2, 2018) (remanding where ALJ rejected all three opinions and assessed plaintiff's "RFC based upon the clinical findings in the record as well as [his] educational and work history, subjective complaints, and daily activities"); *Lee v. Saul,* No. 19CIV9451, 2020 WL 5362619, at *17 (S.D.N.Y. Sept. 8, 2020) ("Given the lack of any controlling medical opinion—or at least one that the ALJ did not largely discount—the ALJ has improperly filled this evidentiary void with his own medical judgment and interpretation of these records.")

While it is true that in some circumstances it is appropriate for an ALJ to make an RFC finding without relying on a medical opinion, particularly where the record contains sufficient evidence from which the ALJ could assess a claimant's RFC, *see, e.g., Pellam v. Astrue*, 508 Fed. Appx. 87, 90–91 (2d Cir. 2013) (summary order), the ALJ here failed to reconcile the assessed RFC determination with *specific* record evidence. *See Paul v. Colvin*, No. 15-CV-310, 2016 WL 6275231, at *2 (W.D.N.Y. Oct. 27, 2016) ("the ALJ must simply explain the link between his RFC assessment and the record evidence supporting that assessment."). In addition, the ALJ's conclusory statements and sweeping citations to the expansive record in this case frustrates meaningful review by the Court.[4] Remand

---

[4] As plaintiff points out, the ALJ provided only general citations to exhibits containing hundreds of pages each. (Dkt. No. 12-1 at 23) The deferential standard of review in social security cases "does not mean that we scour the record for supportive evidence or rack our brains for reasons to uphold the ALJ's decision. Rather, the ALJ must identify the relevant evidence and build a logical bridge between that evidence and the ultimate determination." *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014), *as amended on denial of rehearing* (Oct. 24, 2014) (internal quotation marks omitted).

is therefore appropriate for further findings and a clearer explanation for the ALJ's decision. *See Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir. 1982) (where "we would be unable to fathom the ALJ's rationale in relation to evidence in the record . . . we would not hesitate to remand the case for further findings or a clearer explanation for the decision."); *see Cichocki v. Astrue*, 729 F.3d 172, 177-78 (2d Cir. 2013) (noting that "[r]emand may be appropriate . . . where other inadequacies in the ALJ's analysis frustrate meaningful review").

## CONCLUSION

For the foregoing reasons, plaintiff's motion for judgment on the pleadings (Dkt. No. 8) is granted, defendant's motion for judgment on the pleadings (Dkt. No. 13) is denied, and the matter is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order.

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated:  December 29 2020
        Buffalo, New York

MICHAEL J. ROEMER
United States Magistrate Judge